UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 C 6418 |
| | ) | |
| MOECHERVILLE WATER DISTRICT, N.F.P., | ) | Judge Virginia M. Kendall |
| | ) | |
| | ) | |
| Defendant. | ) | |

## JUDGMENT OF FORECLOSURE AND ORDER OF SALE

This matter coming to be heard on the Motion of Plaintiff United States for entry of a

Default Judgment of Foreclosure and Order of Sale, this Court, having considered the evidence

and being fully advised, makes the following findings of fact, conclusions of law and order:

**I.    JURISDICTION:**

1.    This Court has jurisdiction under 28 U.S.C. § 1345, and the Federal Debt Collection

Procedures Act, 28 U.S.C. § 3001, *et seq.*

2.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that the property at

issue, and the defendant, are located in the Northern District of Illinois.

3.    On October 8, 2010, Mark McDonald, the registered agent for Moecherville, was

served with the following documents: Complaint, the Ex Parte Application for Appointment of a

Receiver, Memorandum in Support of *Ex Parte* Application for Appointment of a Receiver, Order

appointing Illinois Rural Water Association as receiver and the Clerk's Notice of Appointment of

a Receiver.

4.    Under Federal Rule of Civil Procedure 12(a), Moecherville was required to serve their

Answer on or before October 29, 2010.

5.     To date, Moecherville has not filed an Answer or otherwise appeared in this action.

6.     Those nominal party defendants designated as "unknown owner and non-record claimants" were served by publication by publishing a notice of the above-captioned proceedings in the Aurora Beacon News on February 18, 2011, February 25, 2011, March 4, 2011, March 11, 2011, March 18, 2011, and March 25, 2011.

7.     Pursuant to the published notice, "unknown owner and non-record claimants" were required to file their Answer or otherwise appear on or before April 4, 2011.

8.     To date, no "unknown owner and non-record claimants" have appeared, answered or otherwise pled in this action.

9.     On May 15, 2012 (Doc. No. 60), this Court entered an Order of Default against Moecherville and those nominal party defendants designated as "unknown owner and non-record claimants" for failure to appear and/or answer, or otherwise plead, because the time to respond to the United States' Complaint had passed and because proper service of process was effected on Moecherville and any Unknown Owners and Non-record Claimants.

10.     As such, this Court has jurisdiction over all parties and the subject matter presented.

## II.     EVIDENTIARY FINDINGS

11.     On October 7, 2010, United States filed its Complaint to Foreclose Mortgage and Repossession of Chattels against Moecherville.

12.     On October 7, 2010, the United States filed an *ex parte* application and supporting memorandum for the appointment of a receiver to operate the water system during the pendency of the foreclosure proceedings.

13.     On October 8, 2010, the Court granted the United States' *ex parte* application for the

appointment of Illinois Rural Water Association ("IRWA") as the receiver for the water system.

14.    Because Moecherville and any Unknown Owners and Non-Record Claimants are in default for failing to appear and respond, all of the allegations in the Complaint are confessed against each of the Defendants, including the following:

(a)    Capacity in which the United States brings this foreclosure: The United States Department of Agriculture is the legal holder, agent or nominee of the legal holder, of the indebtedness. The United States Department of Agriculture ("USDA") is the owner, agent, or nominee of the owner, of the Mortgage given as security.

(b)    Statement as to defaults: No payments have been made. Mortgagor is now in default for the monthly payments for August 2007 through the present; the balance due on the Note and Mortgage is the total of the principal balance of $2,778,000, plus interest, costs and fees, and advances, if any. The per diem interest rate is $313.95.

(c)    As established by the Declaration of Michael A. Wallace, under the Promissory Notes and Mortgage, the United States is owed the following unpaid amounts:

| | |
|---|---|
| Unpaid principal Balance: | $2,777,999.99 |
| Accrued Interest: | $639,206.40 |
| Costs: | $1,500.00 |
| Total Due: | $3,418,706.39 |
| Per Diem Interest After February 21, 2012 | $313.9521 |

(d)    By their terms, the Promissory Notes and Mortgage provide that the United States shall also be entitled to an award of the expenses reasonably necessary or

incidental to the protection of its lien. These expenses include, but are not limited to, attorney fees, court costs, and expenses of advertising, selling and conveying the property.

(e)    Advances made by the United States in order to protect the lien of this Judgment and to preserve the mortgaged property, such as, but not limited to, payment of real estate taxes and assessments, property inspections, property maintenance, appraisals, and insurance premiums incurred by the United States and not included in this Judgment, but which shall be incurred prior to the foreclosure sale, shall become an additional indebtedness secured by the Judgment lien and shall bear interest from the date of advance by such party at the rate provided in the Mortgage, or, if no rate is provided, at the statutory Judgment rate.

(f)    The Mortgage described in the Complaint and hereby foreclosed appears of record in the Kane County Clerk's Office on July 25, 2005, Recording Number 2006K013204.

(g)    The legal description of the mortgaged real estate (hereinafter referred to as the "Property"), as set forth in the Mortgage, is as follows:

Tract 1: Lot 9 of A.P. Moecher's Fourth Addition to the town of Aurora, Kane County, Illinois, Commonly known as 527 S. Kendall, Aurora, Illinois, PIN 15-26-427-019

Tract 2: The northerly 26.4 feet of Lot 9 in A.P. Moecher's First Addition to the Town of Aurora, Kane County, Illinois, Commonly known as 539 S. Farnsworth, Aurora, Illinois, PIN 15-26-429-017

Tract 3: The easterly 40 feet of the northerly 20 feet of Lot 9 in A.P. Moecher's Fifth Addition to the Town of Aurora, Kane County, Illinois, Commonly known as 1228 Ziegler Ave., Aurora, Illinois, Pin 15-26-427-012

Tract 4: The easterly 45 feet of the northerly 30 feet of Lot 9 in Moocher's Seventh Addition to the Town of Aurora, Kane County, Illinois, Commonly known as 1206 Ziegler Ave., Aurora, Illinois, PIN 15-26-426-01

(h)     The equities in this action are with the United States. The United States has a valid and subsisting first priority lien on the subject property hereinafter described, by virtue of the Mortgage and Promissory Notes. The United States also has a valid and subsisting first priority lien in certain personal property, by virtue of the Loan Resolution Security Agreement and UCC Financing Statement.

(i)     The Mortgage constitutes a valid lien upon the subject property which is prior, paramount and superior to the rights and interests of all other parties, Unknown Owners and Non-record Claimants in and to the mortgaged property hereinafter described, except for real estate taxes and special assessments, if any. Upon entry hereof, the rights of the United States shall be secured by a lien upon the mortgaged property and transferred to any sale proceeds thereof, which lien shall have the same priority as the Mortgage to which this Judgment relates. The rights and interests of all other parties, Unknown Owners and Non-record Claimants are subject, subordinate and inferior to the rights of the United States herein.

(j)     Under the express terms of the Mortgage, Moecherville also pledged to the United States its rights, title and interest in "any property, real, personal, mixed, tangible, or intangible, of every nature and kind whatsoever consisting of sites, and all fixed equipment and appurtenances thereto . . . and all such properties and assets that the Borrower may hereafter acquire, with like effect as though now owned by the Borrower and as though covered and conveyed hereby by specific and apt

Page 5 of 15

descriptions, together with all revenues and service charges which may arise or be had from the operation of the water facility of the Borrower and any and all extensions thereto."

(k)     To further secure repayment of the loan, the defendant executed a Loan Resolution Security Agreement, in which defendant pledged to the USDA "all present and future contract rights, accounts receivable and general intangibles arising in connection with the facility."

(l)     Such security interest was perfected by the filing of a UCC Financing Statement with the Illinois Secretary of State.

(m)     The defendant failed to comply with the Loan Resolution Security Agreement by failing to make timely payment on the loan. The loan therefore becoming due immediately through an acceleration provision in the agreement.

(n)     The Property is not residential real estate, as defined in 735 ILCS 5/15-1219, nor is it agricultural real estate, as defined in 735 ILCS 5/15-1201. Moecherville's right to reinstatement of the Mortgage has expired, because more than ninety (90) days has passed since it was served with summons. 735 ILCS 5/15-1602. Pursuant to 735 ILCS 5/15-1601(b)(i), Moecherville has waived all rights of redemption by express waiver as stated in Paragraph 19 of the Mortgage.

(o)     The lien rights of the Defendants shall be terminated upon the confirmation of a judicial sale.

15.     United States may incur additional expenses after the entry of this Judgment, which shall become additional indebtedness secured by this Judgment lien.

16.     In addition to foreclosing its Mortgage, the United States, pursuant to 810 ILCS 5/9-601 et seq. and the provisions of the loan documents, seeks to foreclose its right, title and interest in certain other collateral.

17.     As security for the subject loans, Moecherville executed a Loan Resolution Security Agreement, under which it pledged to the United States "all present and future contract rights, accounts receivable and general intangibles arising in connection with the facility" (hereinafter referred to as the "Accounts"). Such security interest was perfected by the filing of a UCC Financing Statement with the Illinois Secretary of State.

18.     As further security for the subject loans, Moecherville pledged to the United States its rights, title and interest in "any property, real, personal, mixed, tangible, or intangible, of every nature and kind whatsoever consisting of sites, and all fixed equipment and appurtenances thereto...and all such properties and assets that the Borrower may hereafter acquire, with like effect as though now owned by the Borrower and as though covered and conveyed hereby by specific and apt descriptions, together with all revenues and service charges which may arise or be had from the operation of the water facility of the Borrower and any and all extensions thereto."

19.     A list of the personal property (hereinafter referred to as the "Personal Property") pledged under the terms of the Mortgage is attached to the Plaintiffs' Motion for Default Judgment of Foreclosure and Order of Sale as Exhibit 4.

20.     By virtue of the foregoing, the United States is entitled to the entry of a judgment of foreclosure and sale (i) that provides a money judgment against Moecherville in the sum of $3,418,706.39, with interest accruing at the rate of $313.95 each day after February 21, 2012 until the date of the entry of this judgment; and (ii) that terminates all of Moecherville's rights, title, and

interests in the Property, the Personal Property and the Accounts.

21. The United States has reserved its rights under 735 ILCS 5/15-1504(f) and 735 ILCS 5/15-1511, to seek a personal judgment against Moecherville for any deficiency if the sale of the mortgaged real estate and other collateral fails to produce a sufficient amount to pay the amount due and owing.

22. This Judgment is entered pursuant to 28 U.S.C. § 2001(a) and 735 ILCS 5/15-1506.

**III. IT IS HEREBY ORDERED THAT:**

1. If within thirty (30) days of the entry of Judgment, the sum of $3,418,706.39, plus accruing interest, costs of sale, and subsequent advances are not fully satisfied, then the Property, together with all improvements therein and appurtenances belonging thereto and all other collateral, or so much thereof as may be necessary to pay the amounts due under this Judgment, which may be sold separately without material injury to the parties in interest, shall be sold at public venue to the highest and best bidder for cash.

2. The Property, together with all improvements, fixtures, and appurtenances belonging thereto, the Personal Property and the Accounts, or so much thereof as may be necessary to pay the amounts found due and which may be sold separately without material injury to the parties in interest, shall be sold at public venue to the highest bidder by the Judicial Sales Corporation, or other party recommended by the Court, as Special Commissioner, (hereinafter referred to as "Special Commissioner").

3. The attorneys for the United States shall give notice of such sale. The notice of sale shall be published at least three (3) consecutive calendar weeks (Sunday

through Saturday), once in each week, the first such notice to be published not more than forty-five (45) days prior to the sale, the last such notice to be published not less than seven (7) days prior to sale, by:

(a) Advertisements in a newspaper circulated to the general public in the County in which the real estate is located, in the section of that newspaper where legal notices are commonly placed;

(b) Separate advertisements in the section of such newspaper, which may be the same newspaper, in which the real estate other than real estate being sold as part of legal proceedings is commonly advertised to the general public; provided, that where both advertisements could be published in the same newspaper and that newspaper does not have separate legal notices and real estate advertisement sections, a single advertisement shall be sufficient; and

(c) Notice of public sale shall be given by attorneys for the United States to all parties in the action who have appeared and have not theretofore been found by the court to be in default for failure to plead. Such notice shall be given in the manner provided in the applicable rules of court for service of papers other than process of complaint, not more than twenty-eight (28) days nor less than ten (10) days prior to the day of sale. After notice is given as required in this Section, a copy thereof shall be filed in the office of the clerk of the court entering the judgment, together with a certificate of counsel or other proof that notice has been served.

4.    The United States or any of the parties to this cause may become the purchasers at such sale. If the United States is the successful bidder at the sale, the amounts found due the United States herein, plus all costs, advances and fees hereunder after the entry of this Judgment, with interest accrued between the entry of Judgment and sale, shall be taken as a credit on its bid at the sale. The Special Commissioner may adjourn or continue the sale subject to notice and advertisement pursuant to the requirements of 735 ILCS 5/15-1507(4)(c).

5.      PROPERTY FOR SALE: The Special Commissioner shall offer for sale the Property, with all improvements, fixtures and appurtenances thereto, Personal Property, and Accounts (with the exception of the Deposit Account, Account # 731-430, and the Operations Account, Account # 731-422) or so much of which may be divisible and sold separately without material injury to the parties in interest.

(a)      The Deposit Account (Account # 731-430) is an account that is held for the benefit of the water users and the funds in that account comprise the refundable deposits paid by the users of the water system. The balance in the Deposit Account will be transferred to the highest bidder as part of the sale.

(b)      The Operations Account (Account # 731-422) is not part of the sale. The United States has a perfected security interest in the Operations Account pursuant to the terms of the Loan Resolution Security Agreement and a UCC Financing Statement that was filed with the Illinois Secretary of State on February 1, 2007, Recording Number 11773613. The balance in the Operations Account will be conveyed to the United States, based on its perfected security interest.

6.      TERMS OF SALE: The Property, Personal Property and Accounts, as described in paragraph 5 above, shall be sold at public auction to the highest bidder for cash; requiring payment not less than ten percent (10%) at the time of sale.

(a)      If the highest bidder is not required to obtain the approval of the Illinois Commerce Commission ("ICC"), payment of the remaining ninety percent (90%) of the sale price is due within ninety (90) days plus interest at the statutory judgment rate on any unpaid portion of the sale price from the date of sale to the date of payment.

(b)      If the highest bidder is required to obtain ICC approval, the bidder shall have one hundred twenty (120) days to obtain the approval of the ICC to operate the water system and payment of the remaining ninety percent (90%) of the sale price is due within one hundred twenty (120) days plus interest at the statutory judgment rate on any unpaid portion of the sale price from the date of sale to the date of payment. Upon good cause shown, the bidder may request an

extension in order to secure the approval of the ICC. All payments of the amount bid shall be in cash or certified funds payable to the Special Commissioner.

7. If the bidder fails to obtain the approval of ICC within this time period or fails to comply with the terms of purchase as required, then upon demand by the United States in a notice served on the Special Commissioner and the bidder, the funds submitted shall be forfeited to the United States and shall be applied to the amounts found to be due the United States in this Judgment. Notice by regular mail to the address given by the bidder at the sale shall be deemed sufficient notification by the United States to exercise its option to forfeit the funds paid by the bidder hereunder. The Property, Personal Property and Accounts should be offered for sale without representation as to the nature, quality or quantity of title or recourse to the United States.

8. Upon the sale of the Property, Personal Property and Accounts, Special Commissioner shall promptly give a Receipt of Sale to the purchaser. The Receipt of Sale shall set forth the description of the real estate and personal property purchase(s) and state the amount paid or to be paid therefore. An additional receipt shall be given at each subsequent payment. Upon the request of the successful bidder, Special Commissioner shall deliver a Certificate of Sale and record a duplicate of the Certificate in accordance with 735 ILCS 5/12-119 and 5/12-121. The Certificate of Sale shall be freely assignable and endorsed thereon.

9. PROCEEDS OF SALE: Special Commissioner, upon making of such sale, shall with all convenient speed, file a report of sale and distribution with the Court

for its approval and confirmation; Special Commissioner shall include in the report

of sale a breakdown in the distribution of the sale proceeds and attach a copy of the

Receipt of Sale; out of the proceeds of such sale, distribution shall be made in the

following order of priority:

(a)     The Special Commissioner shall be paid his/her reasonable fees and costs;

(b)     The reasonable expenses of sale;

(c)     The reasonable expenses of securing possession before sale, holding, maintaining and preparing the real estate for sale, including payment of taxes and other governmental charges, premiums on hazard and liability insurance, receiver's and management fees and to the extent provided for in the mortgage or other recorded agreement and not prohibited by law, reasonable attorneys' fees, payments made pursuant to Section 5/15-1505 and other legal expenses incurred by the mortgagee;

(d)     Out of the remainder of such proceeds, the amount found due to the United States in the Judgment shall be paid to the United States;

(e)     If the United States is the successful bidder at said sale, the amount due the United States, plus all costs, advances and attorneys' fees hereunder with interest incurred between entry of Judgment and confirmation of sale shall be taken as a credit on its bid;

(f)     If the remainder of the proceeds shall not be sufficient to pay the above described amounts and interest, the Special Commissioner shall then specify the amount of the deficiency in his/her Report of Sale. If such remainder shall be more than sufficient to pay such amounts and interest, the Clerk of the Court or other party designated by the Court shall hold the surplus subject to the further order of Court.

10.     Special Commissioner shall take receipts from the respective parties to whom

it may have made payments as aforesaid, and file same with its report of sale and

distribution; if there be insufficient funds to pay in full the amounts found due herein, Special Commissioner shall specify the amount of deficiency in its report of sale.

11.    REPORT OF SALE AND CONFIRMATION OF SALE:

(a)    Report of Sale - The person conducting the sale shall promptly make a report of sale to the Court.

(b)    Hearing - Upon motion and notice in accordance with court rules applicable to motions generally, the Court shall conduct a hearing to confirm the sale. The Court shall then enter an order confirming the sale, which order shall include a judgment for possession which judgment shall become effective immediately. The confirmation Order may also:

(1)    approve the mortgagee's fees, costs and additional advances arising between the entry of the judgment of foreclosure and the confirmation hearing; and

(2)    determine the priority of the judgments of parties who deferred proving the priority pursuant to subsection (i) of Section 5/15-1506, but the Court shall not defer confirming the sale pending the determination of such priority.

12.    SPECIAL REDEMPTION: The special right of redemption under 735 ILCS 5/15-1604 is waived under the Mortgage.

13.    JUDICIAL/SHERIFF'S DEED: That upon confirmation of the sale, payment of the purchase price and any other amounts required to be paid by the purchaser at sale, the party conducting said sale shall execute and deliver to the holder of the certificate of sale or if no certificate has been issued, then to the holder of the receipt

of sale or the assignee thereof, a deed sufficient to convey title; said conveyance shall be an entire bar to all claims of the parties to the foreclosure and all persons claiming thereunder and all claims of UNKNOWN OWNERS and any NON-RECORD CLAIMANTS; UNKNOWN TENANTS: OCCUPANTS and LEASEHOLDS; that thereupon, the grantee in such deed, or legal representative or assign, be let into possession of the premises.

14. DURATION OF RECEIVERSHIP: Pursuant to the Court's May 15, 2012 Order (Doc. No. 60), Illinois Rural Water Association ("IRWA") will continue to serve as receiver for the water system until ownership of the Property, Personal Property and Accounts has been transferred to assure the continuous operation and maintenance of the water distribution system to the approximately 370 users who depend on it. This is an extension of the permitted duration of receivership, as provided for in 28 U.S.C. § 3103(c).

15. IRWA is authorized, pursuant to 28 U.S.C. § 3103(g), to retain the "revenues and services charges," as used in the Mortgage, and "all present and future contracts rights, account receivables, and general intangibles, arising in connection with the facility," as that phrase is used in the Loan Resolution Security Agreement.

16. Pursuant to 28 U.S.C. § 3103(g)(3), IRWA will file a final accounting of the receipts and disbursements with the Court, including the receiver's compensation for services rendered.

17. IRWA and the successful bidder will establish a date on which the bidder will take possession of the Property, Personal Property and Accounts. All revenues

generated by the water system prior to the date of transfer will be retained by IRWA. All liabilities incurred by the water system prior to the date of transfer will be paid by IRWA. Commencing on the date of transfer, the successful bidder will be entitled to all revenues generated by the water system and will be liable for all liabilities incurred by the water system. IRWA is entitled to compensation for the reasonable services rendered until the date of transfer.

18.    That the parties hereto who shall be in possession of the premises, or any part thereof, including leaseholders, or any person who may have come into such possession under them or any of them, since the inception of the mortgage or commencement of this suit, shall upon presentment of said Judicial/Sheriff's Deed of Conveyance, surrender possession of the premises to said grantee, his representative or assigns, and in default of so doing, an Order of Possession shall issue.

19.    The Court hereby retains jurisdiction of the subject matter of this cause, and of all the parties hereto, for the purposes of enforcing this judgment herein and to enforce the right to possession after sale.

ENTER:

Virginia M. Kendall
United States District Judge

Date:   May 15, 2012